**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ADAM DANIEL ROICE,**

|                              |                       |
|------------------------------|-----------------------|
|                              | **9:15-cv-26**        |
| **Plaintiff,**               | **(GLS/DJS)**         |

v.

**THE COUNTY OF FULTON et al.,**

**Defendants.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|------------------|-----------------|

**FOR THE PLAINTIFF:**
Law Offices of Elmer Robert Keach,      ELMER R. KEACH, III, ESQ.
III, P.C.                               MARIA K. DYSON, ESQ.
One Pine West Plaza - Suite 109
Albany, NY 12205

**FOR THE DEFENDANTS:**
_The County of Fulton, Tina Atty,_
_Jenna Graham, Thomas Lorey_
Burke, Scolamiero Law Firm              JEFFREY E. HURD, ESQ.
7 Washington Square                     THOMAS A. CULLEN, ESQ.
Albany, NY 12205

_Amy Gagne_
O'Connor, O'Connor Law Firm             ANNE M. HURLEY, ESQ.
20 Corporate Woods Boulevard
Albany, NY 12211

**Gary L. Sharpe**
**Senior District Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Adam Daniel Roice commenced this action, which includes claims under 42 U.S.C. § 1983 and state law, against defendants Fulton County, Amy Gagne, Tina Atty, Jenna Graham, and Thomas Lorey. (Compl., Dkt. No. 1.)  Roice alleges that defendants, in connection with his pretrial detention at the Fulton County Correctional Facility (FCCF), were deliberately indifferent to his serious medical needs in violation of the Fourteenth Amendment, implemented unconstitutional policies and practices, committed various forms of negligence, and inflicted emotional distress.  (*Id.* ¶¶ 28-52.)  Pending is Gagne's motion for summary judgment, (Dkt. No. 62), and the remaining defendants' (hereinafter "County defendants") motion for summary judgment, (Dkt. No. 66).  For the reasons that follow, both motions are granted.

## II. Background

### A. Facts[1]

From March to May 2014, Roice was incarcerated, as a pretrial

_____

[1] Unless otherwise noted, the facts are not in dispute.

detainee, at FCCF for charges of attempted arson in the second degree and petit larceny. (Gagne's Statement of Material Facts (SMF) ¶ 1, Dkt. No. 62, Attach. 16; Dkt. No. 88, Attach. 13.) When he arrived at FCCF, Roice was told how to fill out a request form if he wanted to be seen for a medical issue. (County Defs.' SMF ¶ 4, Dkt. No. 66, Attach. 3.) During his incarceration, Roice filled out such forms and was seen by nurses in the medical unit. (*Id.* ¶ 5.) He also received medication twice a day from a nurse and was able to speak with the nurse as to any complaints that he had. (*Id.*) At various times, Roice was seen by Atty and Graham, two registered nurses at FCCF. (*Id.* ¶ 6.) Roice was also seen by Gagne, a nurse practitioner working at FCCF pursuant to her employment at Eastern Medical Support. (*Id.* ¶ 7; Gagne's SMF ¶¶ 2-3.)

During Roice's incarceration, Gagne treated him for various medical issues. She conducted the initial medical assessment of Roice on March 21, 2014, noting, among other things, his high blood pressure and allergies. (Gagne's SMF ¶ 6.) Roice also reported use of crack cocaine, alcohol, and cigarettes. (*Id.*) On May 9, Gagne prescribed Roice blood pressure medication, an antibiotic, allergy medication, saline spray for nasal congestion, blood pressure monitoring, a low salt diet, and

commissary restriction.  (*Id.* ¶ 8.)  On May 13, Gagne diagnosed Roice with cluster headaches and hypertension, (*id.*), and ordered Ibuprofen and later Verapamil for him, (*id.* at ¶¶ 8, 9).  Gagne saw Roice on May 20 and May 22 for headaches and a punctured ear drum, for which she ordered drops and arranged for a CT scan.  (*Id.* ¶ 10.)  On May 22, Roice filed a formal grievance seeking alternative medical treatment because of an ear infection, painful headaches, and high blood pressure.  (*Id.* ¶ 19.)  When an appointment was made with an outside provider, Roice discontinued the grievance.  (*Id.*)  The evening of May 28, Roice requested and received a stool softener from Graham, took his medications, and returned to his unit with no other complaints.  (*Id.* ¶ 12; Dkt. No. 88, Attach. 7 at 15.)

On May 29, at approximately 7:30 A.M., Roice complained of vomiting through the night and showed Atty vomit in his toilet.  (Dkt. No. 88, Attach. 7 at 14.)  Atty examined him, prescribed him medication for nausea and vomiting, and advised him that she would see him later in the day.  (*Id.*; County Defs.' SMF ¶ 15.)  A few hours later, Atty gave Roice more medication, noted his "[a]bdomen [wa]s soft and non tender," and continued to monitor him.  (Dkt. No. 88, Attach. 7 at 10-11.)  At 1:15 P.M., Atty examined Roice and again noted that his abdomen was soft and "non

4

tender," (*id.* at 9), and she and Graham continued to monitor and treat him, (*id.* at 6-8).  At about 5:45 P.M., when Gagne examined Roice, she found a change in condition in that Roice had abdominal tenderness, hypoactive bowel sounds, costovertebral angle tenderness, and abnormal vital signs. (*Id.* at 5, 22; Gagne's SMF ¶ 16; County Defs.' SMF ¶ 17.)  Gagne then sent Roice to St. Mary's Hospital for evaluation.  (County Defs.' SMF ¶ 17; Dkt. No. 88, Attach. 7 at 4.)

At the hospital, Roice was diagnosed with acute pancreatitis and was given conservative supportive care, including fluids, pain medication, and antibiotics.  (County Defs.' SMF ¶ 18; Dkt. No. 67, Attach. 4 at 6.)  On June 2, Roice was transferred to Albany Medical Center for surgery.  (County Defs.' SMF ¶ 18.)[2]

## B.  Procedural History

Roice filed his complaint on January 9, 2015.  (Compl.)  He brings

_____

[2] Roice contends that he underwent numerous surgeries, including to his pancreas, gallbladder, and heart.  (Pl.'s SMF ¶ 3, Dkt. No. 89.) To support this purported fact, Roice cites a document that is seventy pages long, without specifying a page number.  (*Id.*)  This is but one example of the parties' failure to provide a pin citation for a lengthy exhibit, and the court declines to scour the record for evidence of material questions of fact.  *See Perez v. Cty. of Rensselaer, N.Y.*, No. 1:14-cv-950, 2018 WL 3420014, at *9 n.32 (N.D.N.Y. July 13, 2018).

claims for: (1) deliberate indifference to serious medical needs under Section 1983 and the Fourteenth Amendment[3] against the County, Atty, Graham, and Gagne, (*id.* ¶¶ 28-33); (2) municipal liability and supervisory liability under Section 1983 against the County, Lorey, and Gagne, (*id.* ¶¶ 34-41); (3) negligent supervision or retention under New York state law against the County, Lorey, and Gagne, (*id.* ¶¶ 42-44); (4) medical malpractice under New York state law[4] against all defendants, (*id.* ¶¶ 45-48); and (5) intentional and/or negligent infliction of emotional distress under New York state law against all defendants, (*id.* ¶¶ 49-52).

After discovery, the pending motions were filed. (Dkt. Nos. 62, 66.)

### III. <u>Standard of Review</u>

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here. For a full discussion of the

---

[3] Roice's complaint suggests that this claim is brought under the Eighth Amendment. (Compl. ¶ 29.) However, as correctly noted in Roice's response to defendants' summary judgment motions, (Dkt. No. 90 at 15-16), Roice's claim is analyzed under the Fourteenth Amendment because he was a pretrial detainee. *See infra* Part IV.B.

[4] Although not labeled as such, Roice's state law claim for "[n]egligence/[m]edical indifference," (Compl. at 13), is a medical malpractice claim. *See Scott v. Uljanov*, 74 N.Y.2d 673, 674-75 (1989) (explaining "medical malpractice is simply a form of negligence").

standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

## IV. Discussion

### A. Roice's State Law Claims

#### 1. Medical Malpractice

Gagne argues for summary judgment on Roice's medical malpractice claim because she was not the proximate cause of his alleged injuries. (Dkt. No. 62, Attach. 15 at 11-12.) Likewise, County defendants argue that proximate cause is lacking. (Dkt. No. 66, Attach. 2 at 8-9.) Roice did not respond to these arguments in his opposition. (*See generally* Dkt. No. 90.) Given that the arguments are facially meritorious, Roice's failure to respond is deemed as consent to summary judgment. *See* N.D.N.Y. L.R. 7.1(b)(3); *Jackson v. Onondaga County*, 549 F. Supp. 2d 204, 222 (N.D.N.Y. 2008).

Indeed, Roice has failed to set forth his evidence in terms of the elements of medical malpractice. *See Seils v. Rochester City Sch. Dist.*, 192 F. Supp. 2d 100, 105 (W.D.N.Y. 2002), *aff'd* 99 F. App'x 350 (2d Cir. 2004) ("A district court is not required to speculate on which portion of the

record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.") (internal quotation marks and citations omitted). He pays mere lip service to his claim by referencing his statement of material facts and arguing that defendants were aware of his complaints. (Dkt. No. 90 at 17-18); *see Scaccia v. Stamp*, 700 F. Supp. 2d 219, 240-41 (N.D.N.Y. 2010) (noting vague and conclusory insinuations insufficient to oppose summary judgment).

At a bare minimum, Roice fails to articulate what defendants did or did not do and how he was harmed as a result. *See Steele v. Rochester City Police Dep't*, No. 6:16-cv-06022, 2016 WL 1274710, at *3 (W.D.N.Y. Apr. 1, 2016) (dismissing negligence claim where "[p]laintiff does not articulate the manner in which [defendants] acted negligently"). Roice also fails to offer any "[e]xpert testimony . . . to prove a deviation from accepted standards of medical care and to establish proximate cause," as is necessary. *Milano v. Freed*, 64 F.3d 91, 95 (2d Cir. 1995). Moreover, the record supports Gagne's argument that Roice was treated conservatively at St. Mary's Hospital for four days before his condition advanced to necrotizing pancreatitis, thereby precluding proximate cause. (Dkt. No. 62,

Attach. 10 ¶¶ 11-13; Attach. 15 at 11-12; County Defs.' SMF ¶¶ 18, 20.)

### 2. *Negligent and Intentional Infliction of Emotional Distress*

Like his medical malpractice claims, Roice's emotional distress claims also fail because he does not respond to the facially-meritorious arguments of County defendants and Gagne. (Dkt. No. 66, Attach. 2 at 9-10; Dkt. No. 62, Attach. 15 at 9-10); *see* N.D.N.Y. L.R. 7.1(b)(3); *Jackson*, 549 F. Supp. 2d at 222.

### 3. *Negligent Supervision or Retention*

Fed. R. Civ. P. 56(f)(2) "expressly allows the court to grant a motion for summary judgment on grounds that were not raised in [defendants'] motion, but only after giving the opposing party notice and the opportunity to oppose." *Nick's Garage, Inc. v. Nationwide Mut. Ins. Co.*, 715 F. App'x 31, 34 (2d Cir. 2017). To that end, in its November 9, 2018 Order, the court noted that

> "[t]o state a claim for negligent supervision or retention under New York law, in addition to the standard elements of negligence, a plaintiff must show: (1) that the tort-feasor and the defendant were in an employee-employer relationship, . . . (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence, . . . and (3) that the tort was committed on the employer's premises or with the employer's chattels[.]"

9

(Dkt. No. 98 at 1-2 (quoting *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004)).)  "Given those elements, and the summary judgment record, it appears that the County, Lorey, and/or Gagne may be entitled to summary judgment on Roice's third cause of action."  (Dkt. No. 98 at 2.)

The County and Lorey, (Dkt. No. 101), as well as Gagne, (Dkt. No. 102), filed memoranda on the issue.  In his response, Roice withdrew his third cause of action against Gagne.  (Dkt. No. 103 at 1 n.1; Compl. ¶¶ 42-44.)  Summary judgment is also granted for the County and Lorey. Nowhere does Roice address the elements of a negligent supervision or retention claim, let alone show how his claim against them is viable; he does not cite a single case.  (Dkt. No. 103.)  Roice's response is simply a regurgitation of his prior summary judgment opposition, in some cases verbatim.  (*Compare* Dkt. No. 103 at 4, *with* Dkt. No. 90 at 9.)  This is insufficient in light of the November 9, 2018 Order, (Dkt. No. 98), as well as the memorandum filed by the County and Lorey, (Dkt. No. 101).

**B.    Roice's Deliberate Indifference to Serious Medical Needs Claim**

Because he was a pretrial detainee at all relevant times, Roice's deliberate indifference claim is governed by the Due Process Clause of the Fourteenth Amendment.  *See Valdiviezo v. Boyer*, 17-1093, 2018 WL

5096345, at *2 (2d Cir. Oct. 18, 2018) (citing *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017)).  As with an Eighth Amendment deliberate indifference claim, two prongs must be met: (1) "the alleged deprivation of adequate medical care must be sufficiently serious," and (2) "the defendant must have acted with deliberate indifference, or a sufficiently culpable state of mind."  *Revels v. Corr. Med. Care, Inc.*, 9:17-cv-0088, 2018 WL 1578157, at *4 (N.D.N.Y. Mar. 28, 2018) (internal quotation marks and citations omitted); *see Feliciano v. Anderson*, 15-CV-4106, 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017).  The difference under the Fourteenth Amendment is that, under the second prong, the defendant's state of mind is evaluated objectively.  *See Valdiviezo*, 2018 WL 5096345, at *3 (citing *Darnell*, 849 F.3d at 36).  That is, "[a] plaintiff must show 'that the defendant[] acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant[] knew, or should have known, that the condition posed an excessive risk to health[.]'"  *Valdiviezo*, 2018 WL 5096345, at *3 (quoting *Darnell*, 849 F.3d at 35).

The first prong is the same: "the plaintiff must show that he actually

did not receive adequate care and that the inadequacy in medical care was sufficiently serious." *Valdiviezo*, 2018 WL 5096345, at *2 (citing *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006)). In analyzing the first prong, the first question is "whether the plaintiff was actually deprived of adequate medical care," keeping in mind that the defendant's "duty is only to provide reasonable care." *Salahuddin*, 467 F.3d at 279 (citing *Farmer v. Brennan*, 511 U.S. 825, 844-47 (1994)). The second question "asks whether the inadequacy in medical care is sufficiently serious." *Salahuddin*, 467 at 280. "[I]n cases of delayed or inadequate care, it's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the p[laintiff]'s underlying medical condition, considered in the abstract, that is relevant[.]" *Feliciano*, 2017 WL 1189747, at *10 (internal quotation marks and citations omitted).

    1.   *Gagne*

Gagne argues that Roice's deliberate indifference to serious medical needs claim fails because she appropriately attended to his needs. (Dkt. No. 62, Attach. 15 at 2-5.) She also argues that Roice "was not deprived of treatment[] but merely complains about the type of treatment [that] he

received." (*Id.* at 4.)[5]  The court agrees.

Roice argues that the medical staff, including Gagne, largely ignored his symptoms.  (Dkt. No. 90 at 3.)  But this is directly controverted by the medical records that Roice cites.  For example, on May 9, 2014, in response to Roice's complaints of pain, pressure, nosebleeds, and ear drainage, Atty reviewed his medical chart, examined him thoroughly, and took his vital signs.  (Dkt. No. 88, Attach. 7 at 54.)  When Gagne was informed of those findings, she ordered four different medications, blood pressure monitoring, a diet, and commissary restriction.  (*Id.*)  Roice was also given first time doses "with [an] explanation of medications, doses, [and] side effects," and he "verbalized understanding." (*Id.*)  The other medical records that Roice cites also demonstrate that Gagne, Atty, and Graham treated Roice's frequent and varied medical issues.  (Dkt. No. 90

---

[5] Gagne incorrectly set forth the standard for Roice's deliberate indifference claim as being governed by the Eighth Amendment.  (Dkt. No. 62, Attach. 15 at 2-3.)  However, as discussed above, the first prong remains the same under the Fourteenth Amendment.  As Gagne's arguments pertain to the first prong, and Roice fully responded to her arguments, (Dkt. No. 90 at 15-18), her error in articulating the second prong is of no moment to the court's analysis.

at 3 (citing Dkt. No. 88, Attach. 7 at 26, 37, 42, 52).)[6]  Summary judgment

is thus warranted because the record shows that these defendants did not

deprive Roice of adequate medical care.  *See Keyes v. Strack*, No. 95 Civ.

2367, 1997 WL 187368, at *4 (S.D.N.Y. Apr. 16, 1997) (granting summary

judgment where defendants "made continual efforts to treat and care for

plaintiff"); *Johnson v. Dep't of Corr.*, No. 92 Civ. 7716, 1995 WL 121295, at

*3 (S.D.N.Y. Mar. 21, 1995) (granting summary judgment where plaintiff

"was examined and treated on numerous occasions").

Roice's claim boils down to his argument that "he was only given

pallative [sic] treatment . . . [but] what [he] really needed was an evaluation

by a gastroenterologist and/or hospitalization to address his untreated gall

stones."  (Dkt. No. 90 at 7.)  But "'mere disagreement over the proper

treatment does not create a constitutional claim.  So long as the treatment

given is adequate, the fact that a p[laintiff] might prefer a different

treatment does not give rise to' a constitutional violation."  *Feliciano*, 2017

WL 1189747, at *12 (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d

Cir. 1998) and collecting cases); *cf. Johnson*, 1995 WL 121295, at *3

_____

[6] Gagne also ordered a CAT scan of Roice's head.  (Gagne's SMF
¶ 10.)

14

("While the use of an MRI machine . . . might have facilitated the earlier discovery of plaintiff's injury, the Eighth Amendment does not mandate the use of any particular medical technology or course of treatment.") (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)).  With the benefit of hindsight, Roice simply contends that Gagne should have done more for him and sooner, which is insufficient to defeat summary judgment.  *See Rodriguez v. Conway*, 827 F. Supp. 2d 211, 213 (W.D.N.Y. 2011) (granting summary judgment where "[a]ll that the record shows . . . is that plaintiff subjectively believes that more should have been done for him"); *see Burgos v. Alves*, 418 F. Supp. 2d 263, 265 (W.D.N.Y. 2006) (granting summary judgment where "[w]ith the benefit of hindsight, plaintiff simply contends that [defendants] should have done more sooner").

There are myriad other deficiencies with Roice's deliberate indifference claim against Gagne.  He does not state when he developed gall stones, let alone when Gagne should have known that he had developed them.  (Dkt. No. 90 at 2.)  Further, Roice admits that "the documentary evidence in this case does little to support [hi]s claim."  (*Id.* at

4.)[7]  Instead, he relies on testimonial evidence to support his claim that he

was complaining about nausea, abdominal pain, and vomiting prior to May

29, 2014.  (*Id.* at 4-5.)  Not only is this evidence weak,[8] but even if Roice

---

[7] Roice argues that "[t]here is circumstantial evidence which demonstrates that one of the medical records generated by [d]efendant Atty was either altered or created after the fact."  (Dkt. No. 90 at 6.)  Roice cites, as support, Atty's testimony that, in relation to a note in one of the medical records regarding video of Roice doing pushups, the review of the video took twenty minutes.  (*Id.* (citing Dkt. No. 88, Attach. 20 at 61-62, 121).)  The officer who reviewed the footage testified that it took hours to review the footage.  (Dkt. No. 90 at 6 (citing Dkt. No. 88, Attach. 21 at 27-28).)  The only other support that Roice offers is that certain sick call slips testified about were allegedly not produced.  (Dkt. No. 90 at 4-5.)  However, at least one slip that Roice claims is missing was in fact produced.  (Dkt. No. 88, Attach. 7 at 53.)  In any event, this is not enough evidence for the court to find a "concerted effort by medical staff to destroy and/or alter [Roice']s medical records."  (Dkt. No. 90 at 4.)  In recognition that "to avoid summary judgment . . . a plaintiff must do more than whet the curiosity of the court; he must support vague accusation and surmise with concrete particulars," *Applegate v. Top Assocs., Inc.*, 425 F.2d 92, 96 (2d Cir. 1970), the court declines to engage in such speculation.

[8] For example, Roice argues that other detainees observed him complain frequently about abdominal pain, nausea, vomiting, and difficulty urinating.  (Dkt. No. 90 at 4.)  However, one of the detainees, Ryan Burton, testified that he was released about two weeks before Roice was hospitalized, (Dkt. No. 88, Attach. 22 at 20)—Roice actually states that Burton was released even earlier, on April 23, 2014, (Dkt. No. 90 at 5)—and Burton offers nothing specific in the way of timing or dates, (Dkt. No. 88, Attach. 22 at 18-20, 29, 35).  Another detainee, Todd Plummer, testified that Roice complained of medical issues and put in medical slips, (*id.*, Attach. 33 at 41-42), but Roice states that Plummer was released on May 5, 2014, (Dkt. No. 90 at 5).  Finally, the affidavit of a third detainee,

had been complaining as such, he fails to explain why that should have triggered Gagne to know that he had gall stones or pancreatitis, especially because people vomit for a variety of reasons,[9] (Gagne's SMF ¶ 17[10]), and, at intake, Roice indicated that he had no current or past stomach or gastrointestinal problems, (County Defs.' SMF ¶ 3). Moreover, Roice improperly focuses on the severity of his underlying medical condition in the abstract; nowhere does he articulate the particular risk of harm he faced because of the alleged delay in sending him to the hospital. *See Feliciano*, 2017 WL 1189747, at *10-11. Indeed, Roice admits that had he

---

Freddy Barksdale, attests, in somewhat vague fashion, that Roice complained frequently of medical issues and was vomiting four to seven days before being hospitalized. (Dkt. No. 88, Attach. 18.) Notably, this evidence is inconsistent with Roice's own account of when he began to experience abdominal pain. It is undisputed that on May 29th, Roice reported that his abdominal pain started the day before, and later he reported that it was two days. (County Defs.' SMF ¶ 21.) In any event, Roice offers no evidence that rebuts the undisputed facts that defendants were responsive to his medical needs and treated him.

[9] Notably, the shift log that Roice cites, (Dkt. No. 90 at 5 (citing Dkt. No. 88, Attach. 8 at 17)), states, before "dizzy and nausa [sic]," "[Roice] claims he is on new medicine and he does not feel good at all."

[10] This is an example of Roice's denial of a fact being insufficient because it does not set forth a specific citation to the record where a factual issue arises. *See* N.D.N.Y. L.R. 7.1(b)(3). For such insufficient denials, the court deems the fact admitted as long as it is properly supported. *See id.*

been admitted to the hospital twelve hours earlier, the treatment for his condition would have been the same.  (Dkt. No. 89 at 7.)[11]

In sum, Roice has not offered evidence from which a reasonable jury could conclude that he was actually deprived of adequate medical care. His deliberate indifference claim is a house of cards—it is supported not by sufficient evidence but by a combination of hindsight, vagueness, and quantum inferential leaps that no reasonable jury could make.  And it cannot stand up in the face of the evidence that Gagne and others responded to his needs with treatment.

### 2.  The County, Atty, and Graham

Like Gagne, the County, Atty, and Graham argue that the treatment of Roice was appropriate, and his deliberate indifference claim fails.  (Dkt. No. 66, Attach. 2 at 3-6.)[12]  For the reasons above, which apply equally to the County, Atty, and Graham, the court agrees.

---

[11] Moreover, Roice was treated conservatively at St. Mary's Hospital for four days before his condition advanced.  (Dkt. No. 62, Attach. 10 ¶¶ 11-13; Attach. 15 at 12; County Defs.' SMF ¶¶ 2, 18.)

[12] Also like Gagne, the County, Atty, and Graham incorrectly set forth the standard for Roice's deliberate indifference claim as being governed by the Eighth Amendment.  (Dkt. No. 62, Attach. 15 at 2-3.) However, for the reasons discussed above, *see supra* note 5, this error is inconsequential to the court's analysis.

*3.    Qualified Immunity*

Even if Roice had adduced enough evidence for a reasonable jury to conclude that Gagne, the County, Atty, and/or Graham were deliberately indifferent, they argue that they are entitled to qualified immunity.  (Dkt. No. 66, Attach. 2 at 7-8; Dkt. No. 62, Attach. 15 at 10-11.)  The court agrees. "*Darnell* was decided in 2017 and thus could not have clearly established that reckless medical treatment amounts to deliberate indifference [before 2017]."  *Monaco v. Sullivan*, 737 F. App'x 6, 15 (2d Cir. 2018).  For the reasons explained above, Gagne, the County, Atty, and Graham did not violate clearly-established law when they treated Roice in 2014, and summary judgment is warranted for them on this ground as well.  *See id.*

**C.    Roice's Municipal Liability and Supervisory Liability Claims**

*1.    Municipal Liability*

To establish municipality liability under Section 1983, a plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy, custom, or practice.  *See Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004) (citing *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 692-94 (1978)).  A plaintiff "need not identify an express rule or regulation."  *Patterson*, 375 F.3d at 226

19

(internal citation omitted).

> It is sufficient to show . . . that a discriminatory practice of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law, . . . or that a discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials[.]

*Id.* (internal quotation marks and citations omitted). "A policy, custom, or practice may also be inferred where the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." *Id.* (internal quotation marks and citation omitted).

Roice claims that he was harmed by the County's refusal to spend a sufficient amount of money on inmate healthcare. (Dkt. No. 90 at 11-15.) The County argues that Roice has not submitted enough evidence of other incidents where inmates suffered constitutional violations under similar circumstances. (Dkt. No. 66, Attach. 2 at 6-7.) The court agrees with the County.

Roice's only evidence of the alleged refusal to spend money on inmate healthcare is as follows. In 2000, Lorey wrote to the New York State Commission of Corrections (hereinafter "the Commission") to inform

them that the County Board of Supervisors eliminated three proposed positions from the budget, and per diem employees were being used to cover shortages.  (Dkt. No. 88, Attach. 9.)  In 2006, the Commission conducted a site visit to FCCF, made a number of findings regarding deficiencies, and set forth the actions required to meet the Commission's standards.  (*Id.*, Attach. 10.)  Less than a month later, Lorey responded to the Commission and detailed the actions taken to ensure compliance.  (*Id.*, Attach. 11.)  In 2007, the Commission answered a letter from the County Board's chairman, which asked questions regarding the minimum standards for medical services staffing.  (*Id.*, Attach. 12.)[13]  Also, at an unspecified time, Lorey discussed with the FCCF administrator the need to minimize costs to stay within budget.  (*Id.*, Attach. 32 at 14.)[14]

---

[13] Roice contends that Lorey was "aware of a lawsuit that settled for hundreds of thousands of dollars involving a Fulton County inmate who suffered egregious injuries due to [FCCF]'s physician failing to diagnose him with cancer[.]"  (Pl.'s SMF ¶ 40.)  This is not supported by the record. Lorey testified, "I wasn't even fully aware, and still am not, of the circumstances of the case, other than I know that it was settled."  (Dkt. No. 88, Attach. 32 at 62.)

[14] Lorey testified that such discussions "would have simply been to tell them we had to reduce costs wherever possible, because the [County] board of supervisors was not really willing to give us any additional money."  (Dkt. No. 88, Attach. 32 at 14.)

This evidence is too attenuated both in time and subject matter to support Roice's allegation that the County had a policy, custom, or practice of refusing to spend money on inmate healthcare. *See Plair v. City of New York*, 789 F. Supp. 2d 459, 466-67 (S.D.N.Y. 2011). It seems as if Roice simply cobbled together anything having to do with the County and medical services—no matter how old or unrelated. Even evidence of four examples of a similar constitutional deprivation has been held insufficient to establish a practice that is so persistent or widespread as to justify municipal liability. *See Giaccio v. City of New York*, 308 F. App'x 470, 471-72 (2d Cir. 2009). Here there is no such evidence. Moreover, Roice fails to explain how a lack of County funds caused his alleged harm. *See Outlaw v. City of Hartford*, 884 F.3d 351, 373 (2d Cir. 2018) (holding "plaintiff must show a direct causal link between a municipal policy or custom and the alleged constitutional deprivation") (internal quotation marks and citation omitted).[15]

### 2. *Supervisory Liability*

Lorey and Gagne seek summary judgment on Roice's supervisory

---

[15] Roice cites *Ceparano v. Suffolk Cty. Dep't of Health*, 485 F. App'x 505, 508-09 (2d Cir. 2012). (Dkt. No. 90 at 12.) *Ceparano* is distinguishable because it resolved a motion to dismiss. *See* 485 F. App'x at 506.

liability claims against them.  (Dkt. No. 66, Attach. 2 at 3; Dkt. No. 62,

Attach. 15 at 5-6.)

> It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.  The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [the plaintiff] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (internal quotation

marks and citations omitted).

For the same reasons that Roice has not established municipal

liability, he has not established supervisory liability.  That is, Roice has not

offered sufficient evidence of a policy, custom, or practice, and therefore

he cannot establish supervisory liability on the basis of the third prong as to

Lorey or Gagne.  Roice argues that "Lorey implemented and/or tolerated

practices whereby medical decisions were influence [sic] by cost – namely,

inmates were not given necessary healthcare, referrals to specialists or to

23

the hospital, because of the costs involved." (Dkt. No. 90 at 13.) But he does not offer any examples or evidence to support this argument. *Scaccia*, 700 F. Supp. 2d at 240-41 (granting summary judgment where plaintiff offered only "his own vague and conclusory insinuations"). Further, Roice does not offer evidence of any of the other prongs such that a reasonable jury could impose supervisory liability.[16]

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Gagne's motion for summary judgment (Dkt. No. 62) is **GRANTED**; and it is further

**ORDERED** that County defendants' motion for summary judgment (Dkt. No. 66) is **GRANTED**; and it is further

**ORDERED** that Roice's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

---

[16] To the extent that Roice argues that "Gagne and Lorey . . . are . . . liable for their own negligence in supervising medical care at [FCCF]," (Dkt. No. 90 at 19), he is seemingly supporting his state law claims. In any event, "mere negligence is insufficient as a matter of law to state a claim under [S]ection 1983." *Poe v. Leonard*, 282 F.3d 123, 145 (2d Cir. 2002) (internal citation omitted). Further, the court has already addressed the deliberate indifference claim involving Gagne's alleged personal involvement.

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

January 16, 2019
Albany, New York

Gary L. Sharpe
U.S. District Judge